IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

KORDELL T. SHARP,[1]                         :

     Petitioner,                              :

vs.                                         : CIVIL ACTION NO. 09-0188-CG-C

UNITED STATES OF                            : CRIMINAL ACTION NO. 06-0176-CG
AMERICA,
                                            :
     Respondent.

## REPORT AND RECOMMENDATION

Petitioner, Kordell T. Sharp, a federal prison inmate proceeding *pro se*,

has filed a motion to vacate, set aside or correct his sentence pursuant to 28

U.S.C. § 2255 (Doc. 672). This action has been referred to the undersigned for

entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

It is recommended that Sharp's § 2255 motion be denied.

---

[1]     At times in the record of this case, petitioner is referred to as "Kodell" Sharp while at other times he is referred to as "Kordell" Sharp. (*Compare* Doc. 369 (plea agreement and factual resume refer to petitioner as "Kodell" Sharp) *with* Docs. 561 & 562 (during guilty plea and sentencing proceedings, petitioner is referred to as "Kordell" Sharp)) The undersigned has referred to petitioner in the style of this case as "Kordell" Sharp inasmuch as that is the name he has typed on the front page of his § 2255 petition. (*See* Doc. 672, at 1)

## FINDINGS OF FACT

1.      On July 27, 2006, Sharp was charged by indictment with one count of conspiracy to possess with intent to distribute marijuana, cocaine and more than 50 grams of cocaine base, i.e., crack cocaine, in violation of 21 U.S.C. § 846, one count of possession with intent to distribute crack cocaine and marijuana (on January 18, 2006) in violation of 21 U.S.C. § 841(a)(1), and one count of possession with intent to distribute cocaine (on February 28, 2006) in violation of 21 U.S.C. § 841(a)(1). (Doc. 1) By superseding indictment, filed in open court on August 31, 2006, Sharp was again charged with one count of conspiracy to possess with intent to distribute marijuana, cocaine and more than 50 grams of crack cocaine in violation of 21 U.S.C. § 846, one count of possession with intent to distribute crack cocaine and marijuana (on January 18, 2006) in violation of 21 U.S.C. § 841(a)(1), and one count of possession with intent to distribute cocaine (on February 28, 2006) in violation of 21 U.S.C. § 841(a)(1). (Doc. 199)[2]

2.      Sharp, through his attorney, notified the Court of his intent to plead guilty during a pretrial conference conducted on December 12, 2006. (Doc. 359)

_____

[2]      The superseding indictment added a forfeiture count with respect to all named defendants. (*See id.*, Count Thirty-Five)

3.      On December 21, 2006, the parties filed a plea agreement and factual resume with the Court. (Doc. 369) The plea agreement, reads, in relevant part, as follows:

## PLEA AGREEMENT

The defendant, KODELL T. SHARP, represented by his counsel, and the United States of America have reached a Plea Agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

## RIGHTS OF THE DEFENDANT

1.      The defendant understands his/her rights as follows:

    a.      To be represented by an attorney;

    b.      To plead not guilty;

    c.      To have a trial by an impartial jury;

    d.      To confront and cross-examine witnesses and to call witnesses and produce other evidence in his/her defense;

    e.      To not be compelled to incriminate himself/herself.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

2.      The defendant waives rights b through e, listed above, and pleads guilty to Count 1 of the Superseding Indictment, charging a violation of Title 21 United States Code, Section 846, conspiracy to possess with the intent to distribute

3

controlled substances.

.      .      .

4.      The defendant expects the Court to rely upon his/her statements here and his/her response to any questions that he/she may be asked during the guilty plea hearing.

5.      The defendant is not under the influence of alcohol, drugs, or narcotics. He/She is certain that he/she is in full possession of his/her senses and mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow.

6.      The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. He/She has discussed the facts of the case with his/her attorney, and his/her attorney has explained to the defendant the essential legal elements of the criminal charge(s) which has/have been brought against him/her. The defendant's attorney has also explained to the defendant his/her understanding of the United States' evidence.

7.      The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charge(s) beyond a reasonable doubt. The defendant and his/her counsel have discussed possible defenses to the charge(s). The defendant believes that his/her attorney has represented him/her faithfully, skillfully, and diligently, and he/she is completely satisfied with the legal advice of his/her attorney.

8.      A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that the Factual Resume is true and correct.

9.      This plea of guilty is freely and voluntarily made

4

and is not the result of force, threats, promises, or representations apart from those set forth in this Plea Agreement. There have been no promises from anyone as to the particular sentence that the Court may impose. The defendant avers that he/she is pleading guilty because he/she knows that he/she is guilty.

## PENALTY

10.    The maximum penalty the Court could impose as to Count One of the Superseding Indictment is:

        a.    10 years to life imprisonment;

        b.    A fine not to exceed $4,000,000;

        c.    A term of supervised release of 5 years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, he/she could be imprisoned for the entire term of supervised release; and

        d.    A mandatory special assessment of $100.00.

## SENTENCING

11.    The Court will impose the sentence in this case. The United States Sentencing Guidelines apply in an advisory manner to this case. The defendant has reviewed the application of the Guidelines with his/her attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant understands that he/she will not be allowed to withdraw his/her guilty plea if the applicable guideline range is higher than expected, if the Court departs

5

from the applicable advisory guideline range, or if the Court imposes a sentence notwithstanding the Guidelines.

12.     The United States may provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

13.     The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

14.     Both the defendant and the United States are free to allocute fully at the time of sentencing.

.     .     .

## UNITED STATES' OBLIGATIONS

16.     The United States will not bring any additional charges against the defendant related to the facts underlying the Superseding Indictment and will move to dismiss Counts Thirteen and Fourteen at sentencing. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

17.     The United States will recommend to the Court that the defendant be sentenced at the low end of the applicable advisory sentencing guideline range as determined by the Court.

## APPLICATION OF U.S.S.G. § 5K1.1 AND/OR FED.R.CRIM.P. 35

6

18.   If the defendant agrees to cooperate with the United States, he/she agrees to the following terms and conditions:

.     .     .

g.   If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, a decision specifically reserved by the United States in the exercise of its sole discretion, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable. The United States specifically reserves the right to make the decision relating to the extent of any such departure request made under this agreement based upon its evaluation of the nature and extent of the defendant's cooperation. The defendant understands that the United States will make no representation or promise with regard to the exact amount of reduction, if any, the United States might make in the event that it determines that the defendant has provided substantial assistance. The defendant understands that a mere interview with law enforcement authorities does not constitute substantial assistance for this purpose. The defendant also understands that should he/she provide untruthful information to the United States at any time, or should he/she fail to disclose material facts to the United States at any time, the United States will not make a motion for downward departure. If the defendant's effort to cooperate with the United States does not amount to substantial assistance as determined solely by the United States, the United States agrees to recommend to the district court judge who sentences the defendant that the defendant receive a sentence at the low end of the applicable advisory guideline range.

7

.   .   .

## LIMITED WAIVER OF RIGHT TO APPEAL SENTENCE

19.     The defendant acknowledges that he/she is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. In exchange for the recommendations made by the United States in this Plea Agreement, the defendant knowingly and voluntarily waives the right to appeal any sentence imposed in this case.

20.     With the limited exceptions noted below, the defendant also waives his/her right to challenge any sentence so imposed, or the manner in which it was determined, in any collateral attack, including but not limited to, a motion brought under 28 U.S.C. § 2255.

21.     The defendant reserves the right to contest in an appeal or post-conviction proceeding any of the following:

a.     Any punishment imposed in excess of the statutory maximum;

b.     Any punishment that constitutes an upward departure from the guideline range; or

c.     A claim of ineffective assistance of counsel.

22.     In addition, the defendant reserves the right to petition the Court for resentencing pursuant to 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the defendant's sentence.

(*Id.* at 1, 2-4, 4-5, 7-8 & 9-10 (emphasis in original)) Appearing before Sharp's

signature line on page 11of the agreement is this paragraph: "I have consulted

8

with my counsel and fully understand all my rights with respect to the offenses(s) charged in the Superseding Indictment pending against me. **I have read this Plea Agreement and carefully reviewed every part of it with my attorney**. I understand this agreement, and I voluntarily agree to it. **I hereby stipulate that the Factual Resume,**[3] **incorporated herein, is true and**

---

[3]     The Factual Resume, which Sharp also signed, reads as follows:

The defendant, **KODELL T. SHARP**, admits the allegations of Count 1 of the Superseding Indictment.

### ELEMENTS OF THE OFFENSE

**SHARP** understands that in order to prove a violation of Title 21, United States Code, Section 846, as charged in Count 1 of the Superseding Indictment, the United States must prove:

1.     That two or more persons in some way or manner, came to a mutual understanding to conspire to distribute controlled substances.

2.     That the defendant knowingly and willfully became a member of such conspiracy.

### OFFENSE CONDUCT

Defendant, **KODELL T. SHARP**, admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case.

During the dates charged in the conspiracy count of the indictment, the defendant **KODELL T. SHARP** did knowingly and willfully conspire and agree with others named in the Superseding Indictment to distribute and possess with intent to distribute crack cocaine on Saint Phillips Street, Selma, Alabama, and elsewhere. Agents from Alcohol, Tobacco, Firearms and Explosives, in conjunction with officers from [the] Selma, Alabama police department began

**accurate in every respect, and that had the matter proceeded to trial, the**

**United States could have proven the same beyond a reasonable doubt**."

(*Id.* (emphasis supplied))

4.      That same date, Sharp entered a counseled guilty plea to Count

One of the Superseding Indictment. (Doc. 561, Guilty Plea Transcript; *see also*

Doc. 370)

> THE COURT:      All right. Would you place the defendants under oath?
>
> THE CLERK:      Yes, ma'am. Mr. Sharp, raise your

_____

looking into illegal sales of narcotics in the 1400 block of St. Phillips Street, Selma, Alabama in the early Spring of 2005. By use of pole cameras located at each end of the block, informants, undercover purchases, and "pick-offs" of drug purchasers, agents determined that **SHARP** and the others named in the indictment worked together to sell various amounts of crack cocaine, cocaine, and marijuana to individuals who either drove by or walked up to meet with the various drug dealers, including **SHARP**. The group purchased their drugs from outside sources. This investigation lasted up through August 2, 2006. The defendant agreed with Ford and others to distribute and possess with intent to distribute in excess of 50 grams of cocaine base, also known as crack cocaine within the Selma area; however, the United States and the defendant do not have an agreement as to the exact amount of crack cocaine for which the defendant shall be held accountable for purposes of relevant conduct, and both parties are free to present their respective positions at sentencing for the Court's determination of this issue by the preponderance of evidence.

(Doc. 369, FACTUAL RESUME, at 1-2)

right hand. . . .

(The defendants were sworn.)

.          .          .

DEFENDANT SHARP:     Yes, ma'am.

THE COURT:        All right. Now, I'm going to be asking you a series of questions and sometimes it will seem like you need to answer at the same time. But my court reporter needs to take down your answers individually. And so when I ask you that kind of question, Mr. Sharp, if you will answer first and then you Mr. Jones. All right?

.          .          .

THE COURT:        . . . Do each of you understand that you are now under oath and if you answer any of my questions falsely, your answers may later be used against you in a separate prosecution for perjury or for making a false statement?

DEFENDANT SHARP:     Yes, ma'am.

.          .          .

THE COURT:        Mr. Sharp, what is your full name?

DEFENDANT SHARP:     Kordell T. Sharp.

THE COURT:        And how old are you?

THE DEFENDANT:        19 – I just turned 20. I'm sorry.

THE COURT:        Just turned 20?

DEFENDANT SHARP:     Yes, December the 1st.

11

THE COURT:          How far did you go in school?

THE DEFENDANT:          College.

THE COURT:          You're in college now?

DEFENDANT SHARP:          Yes, ma'am.

.          .          .

THE COURT:          All right. Have either of you been treated recently for any mental illness or addiction to narcotic drugs of any kind?

DEFENDANT SHARP:          Yes, ma'am.

THE COURT:          Tell me about that.

DEFENDANT SHARP:          I went to Mission of Hope drug/alcohol rehab.

THE COURT:          All right. And what kind of drug did you have a problem with?

DEFENDANT SHARP:          Crack cocaine and cocaine, marijuana.

.          .          .

THE COURT:          Are either of you currently under the influence of any drug, medication, or alcoholic beverage of any kind?

DEFENDANT SHARP:          No, ma'am.

.          .          .

THE COURT:          Have each of you received a copy of

the written charges; that is, the indictment in this case?

DEFENDANT SHARP:     Yes, ma'am.

.        .        .

THE COURT:        And have you gone over that indictment and fully discussed the case in general with your lawyer?

DEFENDANT SHARP:     Yes, ma'am.

.        .        .

THE COURT:        Do you understand the charges that are pending against you?

DEFENDANT SHARP:     Yes, ma'am.

.        .        .

THE COURT:        Are you fully satisfied with the counsel, representation, and advice given to you in your case by your lawyer?

DEFENDANT SHARP:     Yes, ma'am.

.        .        .

THE COURT:        Now, I've been provided  with a plea agreement and a factual resume for each of you. And I want you to look at that document, or those documents, and tell me on the record whether that is your plea agreement and factual resume and whether you signed those documents.

MR. JORDAN:        I'll show it to you real quick.

.        .        .

13

DEFENDANT SHARP:     Yes, ma'am.

THE COURT:        All right. Did each of you have the opportunity to read and discuss the plea agreement with your attorney before you signed it?

DEFENDANT SHARP:     Yes, ma'am.

.        .        .

THE COURT:        Are there any agreements that you have with the United States Government on your case that are not written down in the amended plea agreement?

DEFENDANT SHARP:     Yes,  ma'am  –  well no, ma'am, really no. ma'am.

.        .        .

THE COURT:        Do you understand the terms of your plea agreement?

DEFENDANT SHARP:     Yes, ma'am.

.        .        .

THE COURT:        Has anyone made any other or different promises or assurances to you of any kind in an effort to induce you to plead guilty in your case?

DEFENDANT SHARP:     No, ma'am.

.        .        .

THE COURT:        Do you understand that the terms of the plea agreement are merely recommendations to the Court and that I can reject those recommendations without permitting you to withdraw your plea of guilty and impose a sentence that

14

is more severe than you might anticipate?

DEFENDANT SHARP:     Yes, ma'am.

.     .     .

THE COURT:        Has anyone attempted in any way to force you to plead guilty in this case?

DEFENDANT SHARP:     No, ma'am.

.     .     .

THE COURT:        Are you pleading guilty of your own free will because you are guilty?

DEFENDANT SHARP:     Yes, ma'am.

.     .     .

THE COURT:        Do you understand that . . . the offense to which you're pleading guilty is a felony offense and that if your plea is accepted, you will be adjudged guilty of that offense and that such adjudication may deprive you of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury, the right to possess any kind of firearm, and also it could entail the loss of certain federal benefits? Do you understand those possible consequences of your guilty plea?

DEFENDANT SHARP:     Yes, ma'am.

.     .     .

THE COURT:        Now, in each of your cases the maximum possible penalty the Court could impose is a minimum 10 years to a maximum life imprisonment, a fine not to exceed $4 million, a term of supervised release of five years

15

which would follow any term of imprisonment, and if you violated the conditions of supervised release you could be imprisoned for that entire term as well, and a mandatory special assessment of $100. Do you understand those possible consequences of your guilty plea?

       DEFENDANT SHARP:     Yes, ma'am.

.     .     .

       THE COURT:     Under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to consider in determining the sentence in a criminal case. Have you and your attorney talked about how the sentencing guidelines might affect your sentence?

       DEFENDANT SHARP:     Yes, ma'am.

.     .     .

       THE COURT:     Do you understand that the Court will not be able to determine the advisory guidelines sentencing range for your case until after a presentence report has been completed and you and the government have had the opportunity to challenge the reported facts and the application of the guidelines recommended by the probation office, and that the sentencing guideline range determined by the Court may be different from any estimate your attorney or anyone else might have given you?

       DEFENDANT SHARP:     Yes, ma'am.

.     .     .

       THE COURT:     Do you also understand that after your guideline range has been determined, the guidelines themselves further provide for departures either upwards or downwards from that range in certain circumstances?

16

DEFENDANT SHARP:     Yes, ma'am.

.          .          .

THE COURT:          And do you understand that although the Court is required to consider the guidelines, they are advisory only and do not necessarily control the sentence imposed?

DEFENDANT SHARP:     Yes, ma'am.

.          .          .

THE COURT:     Do you understand that in the federal system parole has been abolished and if you are sentenced to prison you will not be released on parole?

DEFENDANT SHARP:     Yes, ma'am.

.          .          .

THE COURT:     Do you also understand that under some circumstances you or the government may have the right to appeal any sentence that I impose; however, each of your plea agreements contains a limited waiver of your right to appeal the sentence itself and in each of your cases you have retained the right to appeal the sentence only if punishment is imposed in excess of the statutory maximum, if punishment is imposed that constitutes an upward departure from the guideline range, or if you have a claim of ineffective assistance of counsel. Do you understand that you have waived your right to appeal in all but those three circumstances?

DEFENDANT SHARP:     Yes, ma'am.

.          .          .

THE COURT:          Do you understand that you have a

17

right to plead not guilty to any offense charged against you and to persist in that plea and that you would then have the right to a trial by jury, that at that trial you would be presumed to be innocent and the government would have to prove your guilt beyond a reasonable doubt, and that you would have the right to the assistance of counsel for your defense, the right to see and hear all of the witnesses and have them cross-examined in your defense, the right on your own part to decline to testify unless you voluntarily elected to do so in your own defense, and the right to the issuance of subpoenas to compel the attendance of witnesses to testify in your defense?

        DEFENDANT SHARP:    Yes, ma'am.

.     .     .

        THE COURT:    And do you understand that if you went to trial and decided not to testify or to put on any evidence, those facts could not be used against you?

        DEFENDANT SHARP:    Yes, ma'am.

.     .     .

        THE COURT:    Do you further understand that by entering a plea of guilty, if that plea is accepted by the Court, there will be no trial and you will have waived or given up your right to a trial as well as those other rights associated with a trial that I've just described?

        DEFENDANT SHARP:    Yes, ma'am.

.     .     .

        THE COURT:    All right. Now, each of you are pleading guilty to a charge of violating Title 21, United States Code, Section 846. And in order to convict you of that offense, the United States would have to prove that two or more persons

came to a mutual understanding to conspire to distribute controlled substances and that you, knowing the purpose of that conspiracy, knowingly and willfully joined in that agreement. Do you understand what the government would have to prove in order to convict you?

       DEFENDANT SHARP:     Yes, ma'am.

.       .       .

       THE COURT:       All right. Now, I asked each of you earlier if you had signed the factual resume and the plea agreement. You said you had, and I want to make sure that you understand that by signing the factual resume you have agreed that the government could prove the facts set forth in the offense conduct section of that document in order to support your guilty plea. Do you understand that and agree to that?

       DEFENDANT SHARP:     Yes, ma'am.

.       .       .

       THE COURT:       All right. I have read those and now I will ask you how do you plead to the charge, guilty or not guilty?

       DEFENDANT SHARP:     Guilty.

.       .       .

       THE COURT:       . . . It is the finding of the Court in the case of United States versus Kordell T. Sharp . . . that [the] defendant is fully competent and capable of entering an informed plea, that the defendant is aware of the nature of the charges and the consequences of the plea, and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential

elements of the offense. The plea is therefore accepted and [the] defendant is now adjudged guilty of that offense.

(*Id*. at 2, 2-3, 3, 4, 5, 6, 6-7, 7, 7-8, 8, 8-9, 9, 10, 10-11, 11 & 11-12)

5.      The Presentence Investigation Report was prepared by the Probation Office on February 15, 2007 and filed as a sealed document on March 19, 2007. (*See* Doc. 460) The defendant interposed the following objections to the Presentence Report:

1.      Defendant objects to paragraph 68 holding Defendant accountable for one hundred seventy point one (170.1) grams of crack cocaine (cocaine base). Defendant submits that his involvement was limited and involved less than one hundred seventy point one (170.1) grams of crack cocaine. This would reduce his base offense level below thirty four (34).

2.      Defendant objects to the two (2) point enhancement in paragraph 69 providing a two (2) point enhancement for Defendant[']s and/or any conspirator[']s possession of a weapon. By all accounts, no witness attributed Kodell Sharp with ever having possessed a weapon.

3.      Defendant objects to paragraph 80 assessing two (2) criminal history points in that these events occurred at the age of sixteen, involved delinquent adjudications, and submits that it is not sufficient conduct to warrant criminal history points. Defendant's criminal history category should be that of one (1) instead of a criminal history category of two (2).

> a. In addition, the use of Defendant's juvenile adjudication violates the Equal Protection, Due Process, and Double Jeopardy clauses of the U.S. Constitution.

(Doc. 521, at 1) The Court stuck the defendant's objections due to the failure of counsel to include the required certification. (*See* Doc. 522)

6. During the sentencing hearing on October 11, 2007,[4] the following occurred:

> THE COURT: All right. Mr. Jordan, have you been over the presentence investigation report? Mr. Sharp, why don't y'all step up to the desk?
>
> MR. JORDAN: Yes, Your Honor, and I've discussed it with Mr. Cherry and the probation officer and we're going to withdraw our objection to the amount of the drugs. We've agreed that that's basically what the evidence would show.
>
> THE COURT: You realize that I struck your objections shortly after they were filed.
>
> MR. JORDAN: I am aware of that, Your Honor, and I have communicated with the two parties Your Honor instructed me to, but I didn't conclude that until probably this morning. But we're withdrawing that, so we're at the 34 level.
>
> THE COURT: You never did refile it, is what I'm saying.
>
> MR. JORDAN: No. Because I didn't – I didn't really get it resolved until this morning, so I haven't refiled it . . . .

---

[4] On October 2, 2007, the government filed notice of intent to call two witnesses at the sentencing hearing. (Doc. 544)

THE COURT:      Let me hear what the government's position is on this.

MR. CHERRY:      Your Honor, if it please the Court, to avoid possible appellate issues, we are not objecting to his filing the objections today or arguing those objections. We have discussed some of those anyway and Mr. Jordan, through the negotiations, I think, will help us from having to put on a lot of testimony on some of these issues.

THE COURT:      And so what is the government's position as to the amount of drugs involved?

MR. CHERRY:      Your Honor, if it please the Court, what probation has in there is 170.1 grams, and I think both parties agree that that is an accurate amount. Chris Ford, one of the witnesses we would proffer to the Court today, I have met with him and with the agent several times, and that is approximately the same amount he would testify to before the Court. It might be within 15 to 20 grams, but it doesn't make any difference in the levels.

MR. JORDAN:      And we're going to withdraw my technical objection – or not object to that amount as of today, after my discussions with Mr. Cherry. And I told him he did not need to call any witnesses on that issue.

THE COURT:      All right. So do you agree that the base offense level is 34?

MR. JORDAN:      Yes, ma'am.

THE COURT:      All right. What other objections do you have?

MR. JORDAN:      Judge, we object to the gun. I've talked to Mr. Cherry about that, and my understanding is that there are no witnesses that ever put any guns in my client's

22

hand. It's a big jump from being a crackhead and selling crack to support your habit versus actually handling a gun for any reason whatsoever. . . . I've never seen any testimony or witnessed any discussion that my client ever handled a gun. That was not within his character and that was outside the scope of his involvement. I understand the rules are foreseeability. . . . I just submit to Your Honor this young man has never handled a gun or been involved with a gun and was not involved with a gun. And the other people, admittedly, were involved with guns. But he wasn't . . . .

THE COURT:       I didn't understand it to be the position that he personally had a gun. I understood the enhancement to be based on the fact that he pled guilty to a conspiracy in which other coconspirators had firearms and that it was reasonably foreseeable. But what is your position on that, Mr. Cherry?

MR. CHERRY:       Your honor, I'd advised Mr. Jordan that I would stand moot on that point. I think the probation office has spoken to that as well as I could. About all I could tell the Court is that Mr. Jordan is not objecting to the fact there were guns found in the homes, back yards, that type of thing, of some of the codefendants. The testimony we would have proffered through Mr. Ford is that this defendant had been there for about six months or so, that he did not take part in any of the problems they had with rival drug dealers, or the gangs, and that he would say also he never saw this man with a gun. But as far as argument on what the probation officer has said, it states it as well as could be stated.

THE COURT:       Well, when you say you stand moot on that point, if he is challenging the gun enhancement, it is incumbent upon the government, if you don't agree with the challenge, to put forth some evidence as to why – and I've heard the evidence in other codefendants in this case.

MR. CHERRY:       Yes, ma'am.

23

THE COURT:       But that doesn't apply to Mr. Sharp, as to why Mr. Sharp should have known that guns were likely to be involved in the conspiracy.

MR. CHERRY:       Yes, ma'am. And I'll have to tell the Court at this point I would not be able to put on testimony that I'm aware of from Mr. Ford or any of the others that we've interviewed that he had seen the guns, would have known the guns were there.

THE COURT:       All right. Well, in that case, I find that the gun enhancement is not appropriate in this case, which means the adjusted offense level is 34. Were there other objections?

MR. JORDAN:       Judge, I would ask if you would also ask that the PSI could be deleted, if that could be deleted from the PSI. Because my understanding is it goes to the department of Bureau of Prisons, and that they will –

THE COURT:       Yeah, but my findings go as well.

MR. JORDAN:       All right.

THE COURT:       So they don't need to delete it from the PSI.

MR. JORDAN:       Okay. Judge, the next issue I'd raised was the juvenile issue. But I've discussed that with Mr. Cherry, I've discussed that with the probation officer, and even though I don't like it, I think I'm wrong in trying to get that criminal history lowered.

THE COURT:       Then it's the finding of the Court the total offense level in this case is 31 with a criminal history level of II. Are there any further objections to those findings?

MR. JORDAN:       No.

MR. CHERRY:      No, Your Honor.

THE COURT:      All right. I will hear from you, Mr. Jordan, as to what's an appropriate sentence in this case.

MR. JORDAN:      Judge, this is a classic case of where I've got a client who is 20 today. He was abandoned by his mother and father at a young age and he was raised by his grandparents, who did an excellent job of raising him. They raised him in the church. When we came for the detention hearing, his pastor was here and I think that had a strong influence on Judge Milling as to releasing him pretrial, because of the pastor. The pastor submitted a letter to Your Honor.

THE COURT:      I saw that.

MR. JORDAN:      His employer submitted a letter to Your Honor. He went to Florida to live with his mom when he was about 15 or 16. His mom was involved in bad things, real bad things, and he got involved in real bad things. She wasn't able to provide . . . . And so he's got that juvenile history a lot from that. He came back to town and . . . he went to this area and he started using crack cocaine and he became a crack junkie. And then he began to sell crack to buy crack. Thank goodness it was only about six months that he was in this area and he was involved in this conspiracy. Thank goodness it was busted and he was caught in the dragnet. And they probably saved his life in a number of areas.

Since that time he has married his girlfriend and has two step-children. That's the letters you have, were from his step-children, who he's taken over a fatherly relationship, providing them the father that they don't have. He's got a really good job. He's got really great grandparents.

So we would ask for a sentence that would perhaps take that into consideration . . . that he would be punished because he did sell crack cocaine, which is a horrible thing, and it wasn't

just like he was hurting other people by selling crack cocaine. He was trying to destroy himself by using the crack cocaine himself. And he admitted to me early on, said: "Mr. Jordan, it basically took me over and it took over my life and if I hadn't been caught when I was, I'd still be on crack cocaine, I'd still be out there in the gutters and out on the streets and I'd still be a junkie."

And this brought it to his grandparents' attention and . . . he has a chance to be a good citizen, because he was raised by good grandparents [who] taught him Christianity and raised him in the church. He does have a supportive girlfriend now [who] is helping him to do the right things by her and her children. He does have a supportive employer . . . so that's where we are.

I do have his grandfather here, Your Honor, [who] would like to be heard briefly.

THE COURT:     Well, let me ask you this, Mr. Jordan: Given the amount of crack cocaine that was involved, is not the 10-year minimum mandatory applicable in this case?

MR. JORDAN:     I'm sure it is, Judge.

THE COURT:     And the guideline range is one month more than that, up to 151 months, is it not?

MR. JORDAN:     Yes, Your Honor.

THE COURT:     All right. So . . . given the minimum mandatory and the closeness of the guideline range to the minimum mandatory, I'm just saying that there's no way the Court can go much below the guideline range in this case. You understand that?

MR. JORDAN:     Judge, . . . I thought they determined the guidelines to become more advisory, where Your Honor did have some discretion.

26

THE COURT:     The guidelines are more advisory, but the statute itself means a minimum 10-year sentence. And so I understand your position that perhaps a lesser sentence is required in this case, but I can't go below the 10-year minimum mandatory. Do you understand that?

MR. JORDAN:     Yes, Your Honor.

THE COURT:     Well, I'll hear from whoever you want to present to me.

MR. JORDAN:     Well, if that's the case, Your Honor, it's fairly irrelevant then.

THE COURT:     Mr. Sharp, do you have anything that you would like to say?

THE DEFENDANT:     Yes, ma'am. . . . First of all . . . I'd like to say I'm sorry for the things I was doing. I was raised by good grandparents [who] taught me well. And I fell into the wrong field and things was happening, and I was a junkie. And I'm proud to say that I'm glad that the judge before you let we went to a rehab program to rehabilitate myself. And I have a good job right now. I appreciate the time I've been out and [I'm] trying to step forward as a man and help my wife with her children and everything.

THE COURT:     All right. Does the government have a position?

MR. CHERRY:     Your Honor, we are recommending to the Court the low end of the guidelines. But as you said, that's just a one-month difference.

THE COURT:     All right. Anything else, Mr. Jordan?

MR. JORDAN:     No, Judge. If you would order him to be allowed to take a drug program in prison, if that would

help reduce his time, that would be appreciated.

THE COURT:          All right. I'm now going to state the sentence I intend to impose and after I've stated it I will allow counsel to make legal objections before actual imposition of the sentence.

I have considered the sentencing guidelines, I've considered the statutory purposes of sentencing, and I frankly think the minimum mandatory sentence is what is an appropriate sentence in this case. Basically whether you call it a departure or a non[-]guidelines sentence –I suppose it's a non[-]guidelines sentence–but they are so close that it hardly makes any difference. But I do find that your relative youth, the short amount of time that you were in this conspiracy, and your rehabilitation from using the drugs merits this minimum mandatory sentence, and that's what I intend to impose.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant Kordell T. Sharp is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 120 months as to count one. The Court recommends that the defendant be imprisoned at an institution where a residential comprehensive substance-abuse treatment program is available.

Upon release from imprisonment the defendant shall be placed on supervised release for a term of five years on count one.

Within 72 hours of release from custody of the Bureau of Prisons, the defendant shall report in person to the probation office in the district to which he is released.

While on supervised release the defendant shall not commit any federal, state, or local crimes, the defendant shall be prohibited from possessing a firearm or other dangerous device, and shall not possess a controlled substance.

28

In addition, the defendant shall comply with the standard conditions of supervised release as recommended by the United States Sentencing Commission and on record with this Court.

The Court orders that the defendant also comply with the following special conditions of supervised release: He shall participate in a program of testing and treatment for drug and/or alcohol abuse as directed by the probation office.

The Court finds that the defendant does not have the ability to pay a fine and therefore a fine is not imposed.

As I indicated, I find the guideline range is not appropriate to the facts and circumstances of this case and sentence at the statutory minimum, which provides for a reasonable sentence and note that it's only a one-month difference between the minimum guidelines and the statutory minimum.

I sentence at this range based upon the defendant's cooperation, his rehabilitation from drug use, his youth, and the position that he had in this conspiracy.

In addition, the sentence imposed addresses the seriousness of the offense and the sentencing objectives of punishment, deterrence, and incapacitation. It is ordered that the defendant pay a special assessment in the amount of $100 on count one, which shall be due immediately.

Now, having stated the sentence I intend to impose, are there any legal objections to it?

MR. JORDAN:      No, Your Honor.

MR. CHERRY:      No, ma'am.

THE COURT:      . . . I hereby impose the sentence as previously stated.

Now, Mr. Sharp, you can appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary or if there's some other fundamental defect in the proceeding that was not waived by your guilty plea. You also have a statutory right to appeal the sentence itself in certain circumstances, although you entered into a plea agreement which waives certain of your rights to appeal the sentence itself. Such waivers are generally enforceable, but if you believe the waiver to be unenforceable, you can test that theory in the appellate Court. If you decide to appeal, you must do so within 10 days of entry of judgment in this case and Mr. Jordan can file that notice for you.

(Doc. 562, at 2-13; *see also* Doc. 553 (judgment in a criminal case))

7.    On October 26, 2007, Sharp filed written notice of appeal. (Doc. 548 ("I don't feel I was represented properly towards my sentencing and that I wasn't in the right state of mind from just lo[]sing a baby. Another thing is that in this conspiracy on my drug quantity was a lie from their witness but I could do nothing about it!")) The United States moved to dismiss Sharp's appeal "due to a valid appeal waiver" contained in the plea agreement. (Doc. 611) The government's motion was granted on April 2, 2008. (*Id.*)

8.    Sharp filed a motion for reduction of sentence on March 17, 2008. (Doc. 604) The Court denied the motion for reduction on May 7, 2008. (Doc. 628) "The defendant was sentenced to the statutory mandatory minimum, and the court cannot reduce his sentence below the mandatory minimum." (*Id.*)

30

9.      On August 22, 2008, Sharp filed a motion to reinstate his appeal. (Doc. 651) That motion was denied by order dated August 27, 2008. (Doc. 652 ("This court has no authority to reinstate defendant's direct appeal. Any such relief must come from the Court of Appeals."))

10.      On March 31, 2009, Sharp filed the present collateral attack on his conviction and sentence pursuant to 28 U.S.C. § 2255. (*See* Doc. 672, at 23 (date petitioner signed the petition)) Therein, petitioner contends that he was denied the effective assistance of counsel. (*See id*.) According to what the undersigned can discern from the petition, Sharp alleges the following instances of ineffective assistance of trial counsel: (1) his plea of guilty was not knowingly and voluntarily entered due to counsel's failure to familiarize himself with the facts and law of the case and realize that the government would not be able to meet its burden of proving beyond a reasonable doubt that he and his co-defendants conspired to possess with intent to distribute more than 50 grams of the crack form of cocaine base[5]; (2) his attorney failed to investigate his case and discover the vital Fourth Amendment issue arising from the fact that law enforcement officers did not have a confidential

---

[5]      In this regard, petitioner argues that his trial attorney completely failed to "properly note, object, or appeal the vital issue of distinguishing the crack form of cocaine base from the hydrochloride form of the same substance." (Doc. 672, at 9)

informant supplying information about him and his co-defendants and, therefore, the conduct of law enforcement in "stopping" individuals leaving the home(s) of his co-defendants was illegal (Doc. 672, at 11) as was "the ensuing application and affidavit for the search warrant, that enabled law enforcement to discover and seize the firearms and drugs (as well as any other tangible and testimonial evidence)" (*id*. at 12)[6]; (3) his attorney did not inform him that he could file a pre-trial motion to challenge the multiplicity of the superseding indictment and seek dismissal of same (Doc. 672, at 14 & 16); (4) his attorney did not inform him that the United States could not live up to its promise to file a § 5K1.1 motion for reduction of sentence on account of his vital cooperation with law enforcement officials (Doc. 672, at 14); (5) his attorney "failed to timely discover, note, object, and bring to the attention of the sentencing court, that the Pre-Sentence Investigation Report [] had improperly and unconstitutionally made reference to his prior juvenile convictions as being the result of (I) his being formerly represented by counsel, and (ii) as being a qualifying prior offense for the purposes of U.S.S.G. §§ 4A1.1(c) and 4A1.2([d])(1), in order that he may be attributed at least two (2) criminal

---

[6]     In this regard, Sharp contends that he was "unaware that he could have filed a timely pre-trial motion to suppress, and thereby prove that he had standing to challenge the validity of the search warrant and resulting seizure in the case at hand."  (Doc. 672, at 14)

history points;" (Doc. 672, at 17)[7] and (6) his first appeal was reduced to a

"mere sham and empty promise" due to his attorney's failure to preserve the

foregoing issues for appellate review (Doc. 672, at 20).[8]

11.     The United States filed its response and motion to dismiss on

June 8, 2009. (Doc. 695) Sharp did not file a reply to the government's

response, though his time for doing so was extended to July 13, 2009 (Doc.

697; *compare id. with* Doc. 673 (initially ordering petitioner to file his reply

by June 22, 2009)).

---

[7]     In this regard, petitioner also contends that "counsel's objections [did] not even
mention [his] entitlement to the application of the Safety Valve's protections to his case in
accordance with § 5C1.2 and § 3553(f)." (Doc. 672, at 18)

[8]     Joe Carl Jordan, Esquire, represented Sharp both at trial and on appeal. (Doc. 672,
at 22-23)

**CONCLUSIONS OF LAW**

1.      28 U.S.C. § 2255 reads, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

2.      In this instance, Sharp contends that constitutionally ineffective assistance of counsel entitles him to the relief afforded by 28 U.S.C. § 2255.[9] In order to establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability

---

[9]      Once a criminal defendant enters a guilty plea, he waives all non-jurisdictional challenges to the conviction's constitutionality and only an attack on the voluntary and knowing nature of the plea can be raised.  *See McMann v. Richardson*, 397 U.S. 759, 772, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970).  Stated differently, "a voluntary and intelligent plea made by an accused person, who has been advised by ***competent counsel***, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546-2547, 81 L.Ed.2d 437 (1984) (emphasis supplied). Therefore, when a § 2255 motion is filed collaterally challenging convictions obtained pursuant to guilty pleas, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989).

exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The *Strickland v. Washington* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

> To succeed on such a claim, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).[10]  In addition, the defendant must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.  In other words, . . . [a petitioner] "must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded [not] guilty and would . . . have insisted on going to trial." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.

*Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995) (footnote, brackets and ellipses added), *cert. denied sub nom. Coulter v. Jones*, 516 U.S. 1122, 116 S.Ct. 934, 133 L.Ed.2d 860 (1996).[11]

---

[10]     "When analyzing ineffective-assistance claims, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (citations omitted).

[11]     It is proper in considering claims made by a federal prisoner under § 2255 to look for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254. *See*

N of 51

3.     When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub nom. Oates v. Moore*, 527 U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d 243 (1999); *see also Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

4.     Petitioner's first claim of ineffective assistance of counsel is that his plea of guilty was not knowingly and voluntarily entered due to counsel's failure to familiarize himself with the facts and law of the case and realize that the government would not be able to sustain its burden of proving beyond a reasonable doubt that he and his co-defendants conspired to possess with intent to distribute more than 50 grams of the crack form of cocaine base. In other words, it appears to be Sharp's position that his trial attorney provided ineffective assistance because he failed to appreciate that the government could not prove beyond a reasonable doubt that the substance he and his co-defendants possessed with intent to distribute was crack cocaine, as opposed

---

*Hagins v. United States,* 267 F.3d 1202, 1205 (11th Cir. 2001) (citing *Holladay v. Haley*, 209 F.3d 1243 (11th Cir. 2000)), *cert. denied*, 537 U.S. 1022, 123 S.Ct. 545, 154 L.Ed.2d 432 (2002).

to powder cocaine or some other form of cocaine.

5.      It is clear that under 21 U.S.C. § 841(b)(1)(A)(iii), an individual

who distributes 50 grams or more of a substance containing "cocaine base"

shall be sentenced to a mandatory minimum 10-year term of imprisonment.

"The Sentencing Guidelines state '"[c]ocaine base," for the purposes of this

guideline, means "crack." "Crack" is the street name for a form of cocaine

base, usually prepared by processing cocaine hydrochloride and sodium

bicarbonate, and usually appearing in a lumpy, rocklike form.'" *Berry v.*

*United States*, 281 Fed.Appx. 967, 968 (11th Cir.) (unpublished decision),[12]

quoting U.S.S.G. § 2D1.1(c) note D, *cert. denied*, ___ U.S. ___, 129 S.Ct. 476,

172 L.Ed.2d 341 (2008); *see also id.* ("We have held the term 'cocaine base'

in 21 U.S.C. § 960(b) should only include crack cocaine because Congress did

not explicitly define the term in the statute and allowed that definition of

'cocaine base' to be promulgated in the Guidelines.").[13] Defining cocaine base

as crack is important because after the guidelines were amended in 1993 the

Eleventh Circuit "held that for sentences imposed on and after November 1,

---

[12]      "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

[13]      "This [] definition of 'cocaine base' also applies to the mandatory minimum, drug penalty statutes." *United States v. Sloan*, 97 F.3d 1378, 1381 n.4 (11th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1277, 117 S.Ct. 2459, 138 L.Ed.2d 216 (1997).

1993, 'cocaine base' included only crack cocaine, and any other form of cocaine base must be treated as cocaine hydrochloride for sentencing purposes." *Reed v. United States*, 2008 WL 2385249, *6 (M.D. Fla. 2008) (citations omitted); *see also id*. ("There is a legal distinction between crack cocaine and the other forms of cocaine base.").

6. Petitioner's wholly conclusory argument in this regard[14] is undermined by the following: (1) the superseding indictment charged him with conspiracy to possess with intent to distribute more than 50 grams of a mixture and substance containing a detectable amount of cocaine base, commonly known as crack cocaine (Doc. 199); (2) his understanding that crack cocaine is a different drug than cocaine (*see* Doc. 561, at 4 ("And what kind of drug did you have a problem with? DEFENDANT SHARP: Crack cocaine and cocaine, marijuana.")); (3) his acknowledgment during his guilty plea proceeding that he understood the charges against him and also understood that the United States would have the burden of proving at trial the legal elements of the criminal charges beyond a reasonable doubt (*id*. at 7 & 11); (4) his

---

[14] Sharp has failed to direct this Court to any credible laboratory or other evidence which establishes that one of the controlled substances he and his co-defendants were selling and conspired to distribute was not cocaine base, that is, crack cocaine, and that the government could not prove that 50 or more grams of crack cocaine was distributed by petitioner and his co-defendants during the time he participated in the conspiracy.

specific acknowledgment during his guilty plea that by signing the factual

resume he was agreeing that the government could prove the facts set forth in

the offense conduct section (*id.* at 11);[15] (5) his failure to object to the

Presentence Investigation Report's factual statement that he sold crack during

the period of January, 2006 until his arrest on August 2, 2006; and (6) his

withdrawal, during sentencing, of any objection to the PSI's finding that he

was accountable for 170.1 grams of cocaine base when faced with the

government's proffer that it was prepared to produce Chris Ford, one of

Sharp's co-defendants, to testify regarding the amount of cocaine base

attributable to Sharp and that his testimony would place the amount within 15

to 20 grams of the 170.1 estimated in the PSI (*see* Doc. 562, at 2-3).  In light

of the foregoing, the undersigned cannot find Sharp's trial attorney deficient

in failing to recommend that petitioner proceed to trial in order to contest the

---

[15]       This section of the factual resume to which petitioner agreed specifically states
that during the dates charged in the superseding indictment Sharp conspired with others named
therein to distribute and possess with intent to distribute crack cocaine on Saint Phillips Street in
Selma, Alabama; that by use of pole cameras located at the end of each block, informants,
undercover purchases, and "pick-offs" of drug purchasers, agents with the Bureau of Alcohol,
Tobacco, Firearms and Explosives, determined that Sharp and others named in the indictment
worked together to sell various amounts of crack cocaine, cocaine and marijuana to individuals
who drove or walked by; the group purchased their drugs from outside sources; and Sharp
agreed with co-defendant Ford and others named in the indictment to distribute and possess with
intent to distribute in excess of 50 grams of cocaine base, that is crack cocaine, in the Selma
area. (Doc. 369, FACTUAL RESUME, at 1-2) The only matter the defendant and government
did not agree upon was the exact amount of crack cocaine for which the defendant should be
held accountable. (*See id.* at 2)

type of drug involved in this case. In other words, the evidence before this Court establishes that the United States could prove that Sharp and his co-defendants conspired to possess with intent to distribute more than 50 grams of crack cocaine, thereby bringing into play the statutory minimum mandatory 10-year sentence petitioner received. Counsel did not provide ineffective assistance in this regard.[16] *Mack v. United States*, 2008 WL 5427804, *6 (M.D. Fla. 2008) ("[T]here was ample evidence that the substance involved in this case was crack cocaine, and an attorney is not ineffective in failing to make a meritless objection."); *see Berry, supra,* at *2 ("Berry cannot show he was prejudiced by his trial counsel's failure to challenge whether the substance he distributed was crack cocaine, because the evidence demonstrated the substance was crack cocaine."); *cf. United States v. Johnson*, 201 Fed.Appx. 734, 736 (11th Cir. 2006) (unpublished decision) ("The district court correctly calculated Johnson's offense level based on his possession and distribution of cocaine base, which is defined as crack, because (1) Johnson admitted at his plea hearing that he sold crack; (2) he failed to object to the PSI's factual statement that he distributed cocaine base; (3) he indicated that he agreed with

---

[16]      In fact, by pleading guilty to the conspiracy charge, petitioner saved himself from the possibility of two additional convictions (and sentences), one for possession with intent to distribute crack cocaine and marijuana and a second for possession with intent to distribute cocaine.

the factual basis for the plea, which stated that he sold crack cocaine to a confidential source; and (4) the indictment charged him with distributing 'cocaine base, crack cocaine,' as opposed to some other form of cocaine."), *cert. denied*, 549 U.S. 1297, 127 S.Ct. 1857, 167 L.Ed.2d 349 (2007).

7.    Sharp next contends that his attorney failed to investigate his case and discover the vital Fourth Amendment issue arising from the fact that law enforcement officers did not have a confidential informant supplying information about him and his co-defendants and, therefore, the conduct of law enforcement in "stopping" individuals leaving the homes of his co-defendants was illegal (Doc. 672, at 11) as was "the ensuing application and affidavit for the search warrant, that enabled law enforcement to discover and seize the firearms and drugs (as well as any other tangible and testimonial evidence)" (*id.* at 12). Again, Sharp's allegations are wholly conclusory and devoid of any reliable evidence that he possessed a viable Fourth Amendment claim which he had standing to raise. *See United States v. Padilla*, 508 U.S. 77, 81 & 81-82, 113 S.Ct. 1936, 1939, 123 L.Ed.2d 635 (1993) ("It has long been the rule that a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that *his* Fourth Amendment rights were violated by the challenged search or seizure. . . . We

41

applied this principle to the case of coconspirators in *Alderman*, in which we said: 'The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Co-conspirators and codefendants have been accorded no special standing.'"); *United States v. Griffin*, 287 Fed.Appx. 845, 848 (11th Cir. 2008) (unpublished opinion) ("Griffin fails completely to address the district court's conclusion that he lacked standing to complain of Harrison's search, but, as the district court correctly recognized, he lacks standing to challenge the seizure of the gun from her pants because the search did not implicate Griffin's Fourth Amendment rights."), *cert. granted and judgment vacated on other grounds,* __ U.S. __, 129 S.Ct. 2432, ___ L.Ed.2d ___ (2009). Because there is no information contained within this claim of ineffective assistance of counsel which implicates Sharp's Fourth Amendment rights, petitioner has established neither the cause or prejudice prong of the *Strickland* standard. *See United States v. Scott,* 2009 WL 1405855, *6 (N.D. Fla. 2009) ("Defendant's vague claim of unreliable informants and false information is insufficient to establish any basis for a motion to suppress, and certainly does not establish ineffective assistance of counsel.").

8.     Sharp contends that his attorney was deficient for failing to inform him that he could file a pre-trial motion challenging the superceding indictment as multiplicitous and thereby seek dismissal of same. Sharp was charged by superseding indictment, as aforesaid, with three separate offenses; he was charged in Count One with conspiracy to possess with intent to distribute marijuana, cocaine and more than 50 grams of cocaine base, i.e., crack cocaine, in Count Thirteen he was charged with possession with intent to distribute crack cocaine and marijuana, and in Count Fourteen he was charged with possession with intent to distribute cocaine. "An indictment is multiplicitous if it charges a single offense in more than one count." *United States v. Williams*, 527 F.3d 1235, 1241 (11th Cir. 2008) (citations omitted); *see also* Black's Law Dictionary, at 1112 (9th ed. 2009) (noting that an indictment is multiplicitous if it charges "the same offense in more than on count of a single indictment[.]"). While each count of the indictment charging Sharp involved controlled substances, each count required different evidence to prove petitioner's guilt. Count one charged *conspiracy to distribute* crack cocaine while Counts Thirteen and Fourteen charged distribution of crack cocaine and marijuana (thirteen) and cocaine (fourteen). Accordingly, Sharp's trial attorney did not err in failing to inform petitioner that he could file a pre-

trial motion challenging the superceding indictment as multiplicitous since the charges were not multiplicitous. *United States v. Bastidas*, 28 F.Supp.2d 1346, 1350 (M.D.Fla. 1998) ("Defendant's trial counsel did not err in not objecting to the multiplicity of the Indictment because the charges were not multiplicitous.") .

9.     Sharp also contends that his attorney failed to inform him that the United States could not live up to its promise to file a § 5K1.1 motion for reduction of sentence based upon his vital cooperation with law enforcement officials. There can be no doubt that the posture of this case was such that application of U.S.S.G. § 5K1.1 was rendered moot inasmuch as the mandatory minimum was ten (10) years[17] and the Court was required to sentence petitioner to the mandatory minimum.  Nonetheless, the undersigned cannot find counsel deficient for not informing Sharp that the government could not file a § 5K1.1 motion for reduction of sentence particularly since the government certainly could have filed (and perhaps can still file) a Rule 35(b) motion for reduction of sentence, Fed.R.Crim.P. 35(b)(1)-(2);  *see* Fed.R.Crim.P. 35(b)(4) ("When acting under Rule 35(b), the court may reduce the sentence to a level below the minimum sentence established by statute."),

---

[17]     The range of punishment under the guidelines was 121 months to 151 months. (Doc. 562, Sentencing Transcript, at 9)

provided it was determined by the government that petitioner had supplied substantial assistance in investigating or prosecuting another person, *compare* Fed.R.Crim.P. 35(b)(1) ("Upon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person.") *with* Doc. 369, Plea Agreement, at 7 ("If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, a decision specifically reserved by the United States in the exercise of its sole discretion, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable.").[18]

10.   Petitioner's next claims that his trial attorney "failed to timely discover, note, object, and bring to the attention of the sentencing court, that the Pre-Sentence Investigation Report [] had improperly and unconstitutionally

---

[18]   Petitioner alleges in a conclusory manner that his cooperation with law enforcement officials was "vital;" however, nothing contained within Sharp's allegations gives rise to any suggestion that he has provided substantial assistance with respect to the investigation or prosecution of another person.

made reference to his prior juvenile convictions as being the result of (I) his being formerly represented by counsel, and (ii) as being a qualifying prior offense for the purposes of U.S.S.G. §§ 4A1.1(c) and 4A1.2([d])(1), in order that he may be attributed at least two (2) criminal history points." (Doc. 672, at 17)[19] A review of the sentencing hearing transcript reveals that Sharp's trial attorney had every intention of objecting to the use of two prior juvenile convictions for the purpose of calculating his criminal history score but withdrew that objection after speaking with the probation officer and assistant United States attorney and learning that such objection would be futile. (*See* Doc. 562, at 6)

---

[19]    Petitioner argues parenthetically that counsel was ineffective for not mentioning his entitlement to application of the safety valve provision in accordance with U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f). Sharp's trial attorney was not deficient in failing to mention the safety valve issue both because it is not at all clear that this provision would have been applicable to Sharp since he received the statutory mandatory minimum sentence of 10 years, *see Untied States v. Lett*, 483 F.3d 782, 788-789 (11th Cir. 2007) ("It is not obvious that the *Booker* decision eviscerated mandatory minimum sentences in every case where the defendant meets the five criteria for safety valve treatment, including those in which the advisory guideline range is above the mandatory minimum."), *cert. denied*, ___ U.S. ___, 129 S.Ct. 31, 172 L.Ed.2d 18 (2008), but, as well, because this safety valve would decidedly not be applicable to his case since his criminal history was properly calculated as rendering two points, *see* 18 U.S.C. § 3553(f)(1) ("Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) . . . the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that– (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines[.]").

11.   Section 4A1.2(d) of the United States Sentencing Guidelines provides:

**Offenses Committed Prior to Age Eighteen**

(1)   If the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add **3** points under §4A1.1(a) for each such sentence.

(2)   In any other case,

   (A)   add **2** points under §4A1.1(b) for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense;

   (B)   add **1** point under §4A1.1(c) for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense not covered in (A).

*Id*. (emphasis in original). "Every other court to consider the applicability of § 4A1.2(d) has indicated that it should not be read to exclude juvenile adjudications of guilt." *United States v. Chanel*, 3 F.3d 372, 373 (11th Cir. 1993) (citations omitted), *cert. denied*, 510 U.S. 1133, 114 S.Ct. 1107, 127 L.Ed.2d 418 (1994). In this case, Sharp was 19 years of age when he was arrested and 20 years of age when he entered his guilty plea and was

47

sentenced. (*See* Doc. 561, at 3) As reflected in the PSI, Sharp was born on December 1, 1986, and, therefore, was 19 years of age at the time of the commencement of the offense for which he pled guilty. That report also reflects that on two occasions within five years of the defendant's commencement of the instant offense, he received two juvenile sentences, while counseled, *see United States v. Kennedy*, 557 F.Supp.2d 1311, 1320 (N.D. Fla. 2008) ("Defendant has supplied no evidence that the convictions were uncounselled, a burden which he, not the Government, bears."), for offenses committed at the age of 16. Therefore, Sharp was properly attributed 2 criminal history points and counsel was not deficient for failing to make a frivolous argument contending that no criminal history points should be attributed to his client.

12.     Sharp's final contention is that his first appeal was reduced to a "mere sham and empty promise" due to his attorney's failure to preserve the aforementioned claims of ineffective assistance of counsel for appellate review. While it would not be unusual for an attorney who has represented a defendant both at "trial" and on appeal to not raise claims of his own ineffectiveness before the trial court, the failure to preserve such claims in the instant case was not deficient given that they are all meritless. Thus, there was

no ineffective assistance of counsel in this regard.

13.   In consideration of the foregoing, the Magistrate Judge recommends that the Court deny Sharp's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255.

## CONCLUSION

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request to vacate, set aside or correct his sentence should be **DENIED**.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation

of the Magistrate Judge.

**DONE** this the 7th day of August, 2009.

s/WILLIAM E. CASSADY

**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.     *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.